## JOE PROCTOR v. STATE.

No. A-544.   Opinion Filed May 23, 1911.

(115 Pac. 630.)

**RIOT—Elements of Offense.** To constitute the offense of riot, there must be, not only a common intent on the part of three or more persons, acting together to do an unlawful act by use of force or violence, or by threats to use force or violence, accompanied by immediate power of execution, but also concert of action in furtherance of such intent. And where the evidence fails to prove or tend to prove any facts or circumstances from which a common intent to do such act might be inferred, or that such persons assembled, confederated, acted in concert, or acted together, a conviction for riot will not be permitted to stand.

(Syllabus by the Court.)

*Appeal from District Court, Adair County; Jno. H. Pitchford, Judge.*

Joe Proctor was convicted of riot, and he appeals. Reversed and remanded, with instructions.

Joe Proctor, plaintiff in error, was charged jointly with Buster Scraper, Henry Turn, and Charles Sanders with the crime of riot, alleged to have been committed on or about May 22, 1909. Said information alleges that:

"They, the said Joe Proctor, Buster Scraper, Henry Turn, and Chas. Sanders, did then and there riotously assemble to obstruct and resist a public officer of this state, to wit, W. C. Colvin, marshal of the incorporated town of Westville, in the execution of legal process, to wit, a warrant in the hands of the said W. C. Colvin for the arrest of Henry Turn, and they the said Joe Proctor, Buster Scraper, Henry Turn, and Chas. Sanders, being then and there armed with a dangerous and deadly weapon, to wit, a pistol and a knife, and they, the said Joe Proctor, Henry Turn, Buster Scraper, and Chas. Sanders, did then and there in the manner and by the means aforesaid unlawfully, intentionally and feloniously commit the offense of riot."

October 12th the defendant, Joe Proctor, entered a plea of not guilty and demanded a severance, which was allowed. Whereupon he filed an application for a change of venue, which was overruled by the court.

The evidence on the part of the state was, in brief, substantially as follows: On the day named in the information, W. C. Colvin, city marshal of Westville, secured a warrant for Henry Turn for being drunk, and asked Eli Whitmire to go with him. They went to Smith's restaurant. This defendant and Colvin had a scuffle on the sidewalk, and Colvin testifies that defendant threatened to kill him, and took his knife out of his pocket and tried to open it. Whitmire fired several shots while scuffling with Turn.

Eli Whitmire testified that he went with the marshal, Colvin, to Smith's restaurant to arrest Henry Turn for being drunk. The record then shows his testimony as follows:

"Before we got there, I saw Henry Turn inside the restaurant, and I went on in there. I didn't see what Mr. Colvin done, as he was right behind me; I just walked up and got Henry Turn by the shoulder, and says, 'Henry, you are getting too drunk, and we will have to take charge of you,' and he made a grab for my

pistol, and I guess we both grabbed for it. I got hold of the handle, and he got it by the barrel, and, in order to get him loose from it, I pulled the trigger, and shot it down through the floor, and then he turned it loose. About that time some one else come in—I don't know who it was; and we scuffled there for a little bit there in the house, and Turn got around towards the counter, and by that time there had several come in. Q. Did you see Proctor at that time? A. No, sir. Q. Did you see Scraper? A. Yes, sir; I was looking for some one to help, and directly after that we got turned clear around, and some one hollowed to look out, and I looked out at the door, and Buster Scraper was off the porch on the ground there with a pistol; and I threw ·my gun down on him and told him to put the pistol down, and he dropped it on the porch, and we scuffled around there for a little bit, and didn't see where Buster went, nor who it was that took charge of the pistol. He dropped it, though, when I threw my pistol down on him. We then took Henry Turn to the cooler."

He then testified that he next saw the defendant, Proctor, going down the street towards the post office; that he stopped him, and Proctor said that he wanted to go to the post office and mail a letter; that he went with him; that Proctor asked him if he thought he was able to take him, or something to that effect, and witness told him he was willing to try. Just then Marshal Colvin came up, and there was some talk. Mr. Alberty then came up and said to let him take Proctor, and witness asked Marshal Colvin what to do, and he said to let Alberty have him if he could take him, and Proctor walked off with Alberty.

Nat Dannenberg testified that he was deputy sheriff; that he heard a shot at Smith's restaurant and went up there, and Proctor and the marshal were scuffling. Proctor got his knife out of his pocket and was trying to open it, and he went up and took it away from him; that Buster Scraper was standing out in the street with a pistol in his hand, and Tuck Alberty was holding Henry Turn; that he turned Joe Proctor over to Tuck Alberty, and he took Henry Turn; that Henry Turn had a quart ·bottle of whisky stuck down in his shirt; that he made him throw the whisky on the ground; that witness had a pistol in his hand that

he had taken from Buster Scraper. Several other witnesses testified substantially the same.

On the part of the defense, Will Alberty testified that he saw Colvin and Whitmire come to Smith's restaurant; that Whitmire went in and commenced to scuffle with Turn; that Colvin was on the porch, and Joe Proctor came out of his room, where he lived near there, and commenced to scuffle with Colvin; that Proctor came out of his room about the time of the shooting; that he stood within eight or ten feet of them, and did not hear Proctor make any threats.

Thomas P. Alberty testified: That he was standing on the Kansas City Southern Railroad with John Forgey, Frank Forgey, and Buster Scraper, and saw Colvin, Whitmire, and two or three others go to Smith's restaurant; that he spoke to Scraper and asked him what they were going to do; that just about that time he saw Eli Whitmire arrest Henry Turn, and Henry tried to pull loose from him; that they scuffled into the restaurant; then he heard some shooting in the house; that he saw Joe Proctor standing on the porch near the door of the house right north of Smith's restaurant, where Proctor had his room; that Proctor was standing four or five feet from the door of his room; that witness went up and arrested Henry Turn and started to jail with him, and turned him over to Nat Dannenberg; that witness then took Joe Proctor into his room, and he went to sleep; that Proctor was drunk; that he next saw him walking down the street, going in the direction of the post office, with several officers going along; that they were having an argument, and he went, at the request of several persons, and took Proctor to the jail and locked him up; that he did not have any trouble in taking him there.

John Forgey testified that he· saw Joe Proctor standing near the door of his room when the trouble started; that at that time he was with Tuck Alberty, Buster Scraper, and Frank Forgey, standing on the railroad; that they went .over to Smith's restaurant when the shooting commenced; that Buster Scraper had a

pistol, and Eli Whitmire told him to drop it. Just then Nat Dannenberg ran up and took the pistol.

Ed Walkingstick testified that he saw Joe Proctor on the porch when Colvin met him; that they took hold of one another and scuffled, and some one separated them.

Joe Proctor, the defendant, testified on his own behalf: That he occupied one of the Smith's restaurant rooms on the north side of the restaurant. When he first heard the trouble, he was in his room, and went to the door, and Colvin came running towards the restaurant door; that he grabbed a hold of Colvin and held him there, because he thought some one would get killed in the house, that Colvin had a gun in his hands; that he did not attempt to take the gun from him; that he was not armed, except that he had a pocket knife in his pocket; that his room is separated from the restaurant proper by a narrow alley; that he made no threats and had never talked with the other defendants.

October 13th the jury returned their verdict, finding the defendant, Joe Proctor, guilty as charged in the information. Motions for a new trial and in arrest of judgment were duly filed, which motions were overruled. October 15, 1909, judgment was pronounced and entered, and the defendant was sentenced to serve a term of two years in the state penitentiary. From which judgment an appeal was taken by filing in this court, on January 12, 1910, a petition in error, with case-made attached.

*Nance & Priest,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, JUDGE (after stating the facts as above). Counsel for plaintiff in error contend that there is no testimony tending to prove the commission of the crime of riot, and that the testimony tends only to show the commission of a misdemeanor, for which offense the district court of Adair county did not have jurisdiction.

The provisions of the statute dealing with the subject of riot are as follows:

"Sec. 2497 (Snyder's Sts.).   Any use of force or violence, or any threats to use force or violence if accompanied by immediate power of execution, by three or more persons acting together and without authority of law, is riot.

"Sec. 2498.   Every person guilty of participating in any riot is punishable as follows:  1st.   If any murder, maiming, robbery, rape or arson was committed in the course of such riot, such person is punishable in the same manner as a principal in such crime.   2nd.   If the purpose of the riotous assembly was to resist the execution of any statu e of this state or of the United States, or to obstruct any public officer of this state or of the United States, in the performance of any legal duty, or in serving or executing any legal process, such person is punishable by imprisment in the state prison not exceeding ten years and not less than two.   3rd.   If such person carried at the time of such riot, any species of firearms, or other deadly or dangerous weapon, or was disguised, he is punishable by imprisonment in a state prison not exceeding ten years and not less than two.   4th. If such person directed, advised, encouraged or solicted other persons, who participated in the riot, to acts of force or violence, he is punishable by imprisonment in the state prison for not less than three years.   5th. In all other cases such person is punishable as for a misdemeanor.

"Sec. 2499.   Whenever three or more persons acting together, make any attempt to do any act toward the commission of an act which would be riot if actually committed, such assembly is a riot.

"Sec. 2500.   Wherever three or more persons assemble with intent or with means and preparations to do an unlawful act which would be riot if actually committed, but do not act toward the commission thereof, or whenever such persons assemble without authority of law, and in such a manner as is adapted to disturb the public peace, or excite public alarm, such assembly is an unlawful assembly.

"Sec. 2501.   Every person who participates in any rout or unlawful assembly is guilty of a misdemeanor."

Under the statute a riot cannot be committed by one person alone, or two persons acting together; there must be three or

more persons acting together, and without authority of law. Therefore, in order to make out a case of riot, it was incumbent upon the state to prove, beyond a reasonable doubt, that there were three or more of the defendants acting together, and without authority of law; that the three or more defendants, without authority of law, used force or violence, or threatened to use force or violence, which threats were accompanied by immediate power of execution, and that they so acted together.

There is a total absence of testimony that the defendants named ever assembled or confederated to violate the law, or that they acted in concert, or acted together. To render persons guilty of riot, they must act in concert, and it must be proved that at least three persons were engaged in the unlawful act. While the conduct of some of the defendants was reprehensible, to say the least, we cannot, as a matter of law, say that the evidence tends to prove the crime of riot. The evidence only tends to prove a violation of section 2505, Snyder's Statutes, which reads as follows:

"Every person who resists, or enters into a combination with any other person to resist the execution of any legal process, under circumstances not amounting to a riot, is punishable by imprisonment in a county jail not exceeding one year, or by a fine not exceeding one thousand dollars, or both."

The evidence in this case tending only to prove the commission of a misdemeanor, we are clearly of the opinion that the district court was without jurisdiction. As this conclusion necessitates a reversal of the judgment it is not necessary that we shall consider the various other assignments of error presented in the record.

The judgment of the district court of Adair county is hereby reversed, and the cause remanded, with instructions to proceed in accordance with the views herein expressed.

FURMAN, PRESIDING JUDGE, and ARMSTRONG, JUDGE, concur.